(100 South. 290)

No. 25862.

## WEIL v. SCARBROCK et al.

(April 21, 1924. Rehearing Denied by Division B May 12, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Fraudulent conveyances ⬤⟫273—Burden of proving bona fides of sale held to be on third opponent.**

Where, on execution issued on a judgment against the maker of notes, defendant's son and brother intervened, claiming the property through sale, and it appeared that the sale was made by defendant while insolvent, and that he retained the property and exercised ownership over it, *held*, that the burden of proving the bona fides was on the opponent claiming under the sale.

2. **Fraudulent conveyances ⬤⟫295(1)—Finding that sales by insolvent to relatives were pretended sustained.**

Where, on execution issued on a judgment against the maker of notes, defendant's son and brother intervened, claiming the property through sale, and it appeared that the sale was made by defendant to the son while defendant was insolvent, and that he retained the property and exercised ownership over it, evidence *held* to sustain finding that the sale from defendant to his son and from the son to defendant's brother were both pretended.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Leven L. Hooe, Judge.

Action by Isaie Weil against W. W. Scarbrock, wherein John A. Scarbrock and another intervened as third opponents. Judgment for plaintiff, and third opponent named appeals. Affirmed.

Bruton T. Dawkins and John H. Overton, both of Alexandria, for appellant.

J. B. Nachman and T. A. Carter, both of Alexandria, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Plaintiff, having obtained judgment against W. W. Scarbrock as the maker of two past-due promissory notes, caused execution to issue under which certain cattle and crops, gathered and ungathered, were seized as the property of the judgment debtor.

John A. Scarbrock, the brother, and Willie Scarbrock, the son, of defendant, by way of third oppositions, coupled with injunctions, enjoined the seizure. John A. Scarbrock claimed to own the cattle, and Willie Scarbrock asserted ownership to the crops. The basis of these respective claims of ownership was a purported sale by W. W. Scarbrock of all his cattle, crops, gathered and ungathered, and other property, to his son, Willie Scarbrock, and a purported sale by Willie Scarbrock of the cattle thus acquired to his uncle, John A. Scarbrock.

Defendant in these third oppositions answered, setting up that the said sales were mere shams and simulations, and, alternatively, should it be held said sales possessed any reality or substance whatever, that they were executed in fraud of defendant's rights as a creditor, and should be annulled.

The court below rejected the demands of opponents, set aside the pretended sales, decreed the property seized to be the property of W. W. Scarbrock and subject to plaintiff's judgment, and dissolved the injunctions with damages of $150 against Willie Scarbrock and $400 against John A. Scarbrock, and the sureties on their respective injunction bonds. Both opponents were granted appeals. John A. Scarbrock perfected his appeal; Willie Scarbrock did not. The present appeal is prosecuted by John A. Scarbrock.

The conclusion is irresistible that the sales relied on by the appellant were fraudulent simulations. Willie Scarbrock was a minor at the time of the alleged sale by his father to him, and he was also a minor at the time he is alleged to have sold the cattle to his uncle John A. Scarbrock.

In the sale to his son, W. W. Scarbrock disposed of his entire property, "except a horse, saddle and bridle," notwithstanding the vendor had a wife and other living children besides Willie. The wife and the daughters were the sole witnesses to the transaction, which was purported to have been entered into on November 21, 1921, or about 10 months prior to the date of the issuance of the writ of fieri facias on September 22, 1922.

The consideration for the sale, as sworn to by the witnesses, was $5,040 which was alleged to have been liquidated in four payments. The initial payment on November 30, 1921, amounted to $1,500, which Willie Scarbrock testified he had saved over a period of years in a "tool box." This in face of

156 La.—6

the evidence that he was a minor; that he lived and worked with his father and received $20 per month and board during the year 1921. The witness claimed to have made the second payment of $1,270 on January 30, 1922, from earnings derived from butchering and selling cattle for various undisclosed persons. This money was also kept in the "tool box" in question. The third payment, also $1,270, made on June 30, 1922, was made from the avails of a loan of $2,000 said to have been negotiated with one A. M. Melder, a distant relative of the Scarbrocks. Mr. Melder is a farmer and stock raiser living in Rapides parish, near the town of Glenmora, some 50 miles distant from the home of the Scarbrocks. The loan was made without interest or security. The money was not withdrawn from bank, but was kept at home by the lender, although on the day of the alleged loan Mr. Melder did have a bank account with the Glenmora Bank & Trust Company, showing a balance of $80. The overplus from the loan was deposited by Willie Scarbrock in the convenient "tool box."

The final payment of $1,000 was made on September 23, 1922, as testified by Willie Scarbrock, from the proceeds of the sale of the cattle to John A. Scarbrock for $2,216; said sale having been made for the purpose of obtaining the necessary funds to repay the loan made from A. M. Melder.

In connection with the purported sale to John A. Scarbrock, it is significant that the execution issued on September 22, 1922, the sale was closed on Sunday, September 24, 1922, and on the following day, September 25, 1922, the notice of seizure was actually served in John A. Scarbrock's presence, he having ridden over from his home some 14 miles away. John A. Scarbrock spent most of the day Sunday branding with his mark part of the cattle he claims to have purchased, showing the necessity for haste.

The horses and mules were removed at midnight, and were not reached by the sheriff.

John A. Scarbrock testified that he paid his nephew, Willie Scarbrock $2,216 only the day before the seizure was levied, yet he never made any effort to obtain the return of said money, and exhibited an indifference in regard thereto which is inexplicable except on the theory that the transaction testified to had never taken place. When asked concerning the payment of the purchase price and where he had obtained the funds, he stated he had previously carried a bank account, but some three months prior to the sale had withdrawn the few dollars remaining of his bank balance; that he raised the money to make the alleged purchase by selling some cattle and by borrowing a few hundred dollars from his son, Fred. Scarbrock, who resided with him, who also had no bank account, but kept his money at home.

In all of the transactions involving the payment of money, not a single check was given and not a bank deposit made.

The pretended sale by W. W. Scarbrock to his minor son, Willie Scarbrock, was by memorandum only, and no inventory was taken of the cattle sold in order to ascertain their kind and number. No corporeal delivery was made either in the purported sale from W. W. Scarbrock to Willie Scarbrock or in the sale by the latter to John A. Scarbrock. The only delivery attempted to be established was a "range delivery," that is to say, the cattle were said to have been sold on the range unaccompanied by corporeal delivery.

It is shown that notwithstanding the alleged sale to his minor son W. W Scarbrock continued to exercise all rights of ownership over the property. He dipped the cattle in his own name; he negotiated for the sale of cream to the Alexandria Creamery, and collected the price thereof. In fact, he at all times, in acts and conversations, treated said cattle as his property.

We are not impressed with the attempt to show that 60 of the 100 head of cattle, more or less, claimed to have been sold to Willie Scarbrock, were the property of his mother, and that she received a part of the proceeds. It is claimed in the testimony that Mrs. Scarbrock at the time of her marriage received 55 head of cattle by donation from her mother. This was 26 years prior to the date of the seizure herein complained of. In the so-called memorandum the name of Mrs. Scarbrock nowhere appears as being a party to the sale. The alleged acknowledgments of payments written by the Scarbrocks themselves show that they were all made to W. W. Scarbrock, and that Mrs. Scarbrock received nothing. Nor does Mrs. Scarbrock satisfactorily account for the proceeds which she claimed to have received.

It is admitted that W. W. Scarbrock is insolvent. The only property he possessed after the pretended sale to his son was a horse, saddle, and bridle.

[1, 2] In the circumstances of this case, the sale by a father in insolvent circumstances to his son, the retention of the property and the exercise of rights of ownership by the father after the sale placed the burden of proving the bona fides of the transaction upon opponent who is claiming under said sale. Pruyn v. Sheriff, 51 La. Ann. 320, 25 South. 125. Opponent has not only failed to sustain this burden, but the preponderance of the evidence is against the verity of both pretended sales.

Judgment affirmed.

Rehearing denied by Division B, composed of DAWKINS, LAND, and LECHE, JJ.