(129 So. 630)

CUSIMANO v. FERRARA et al.

No. 30315.

July 2, 1930.

S. S. Reid, of Amite City, for appellant.

Rownd & Warner, of Hammond, for appellees.

### ST. PAUL, J.

This is an action en declaration de simulation. The purpose thereof is to set aside and annul a sale of 40 acres of land by Dominick Ferrara to Thomas Ferrara, his son, executed on May 17, 1923, and to subject said land to a judgment in favor of the plaintiff against the father. From a judgment in favor of the defendants, the plaintiff appeals.

## I.

On July 20, 1922, the Strawberry Growers' Association executed its note in favor of plaintiff for $4,000, due April 20, 1923. This note was indorsed by Dominick Ferrara, Vincenzo Nicolosi, Paolo Nicolosi, V. S. Dantoni, Joe Sasso, Tony Giovanni, and Angelo Nicolosi.

When the note became due, it was not paid, and shortly thereafter, to wit, on October 19th 1923, plaintiff obtained judgment thereon against the maker and all the indorsers thereon in solido.

Before this judgment was obtained, but shortly after the note became due, to wit, on May 17, 1923, Dominick Ferrara, one of the indorsers thereon, who was the father of nine sons, all unmarried, and residing with him on the premises in controversy, sold to his eldest son all the cattle on the place for a named consideration of $1,000, and on the same day sold to his second son, Tom, who was emancipated on that same day, the property here in controversy for the named consideration of $400 cash and the assumption of a vendor's lien upon the property for $600. The father thereby disposing of all his property subject to seizure, and having nothing left.

After this the father continued to reside upon the property, and resides there still. Owing to this, and to the near relationship between the parties, the sale is presumed to be simulated, unless the contrary be clearly shown. Pruyn v. Young, 51 La. Ann. 320, 25 So. 125; Lawson v. McBride, 121 La. 282, 46 So. 312; Weil v. Scarbrock, 156 La. 159, 100 So. 290.

We are satisfied that the father remained in control of the property after the alleged sale to his son. Two witnesses, plaintiff and Distefano, testify that he shipped the strawberries off the place in the year 1924, and this is

corroborated by the fact that the son made no deposits in the bank until April, 1926, after which he made deposits regularly until August of that year.

As to the cash money, $400, alleged to have been paid, the testimony of the father and son is that the son had been working some years in a sawmill and had given his earnings to the father to keep. But no account was kept of the moneys thus given, and the two of them testify only in a most general way that the money given the father amounted to $400. We do not think this proof sufficient, for the father testifies that he also owed his eldest son $1,000 for which he sold him the cattle on the same day, and the consequence of accepting such testimony as true would be to believe that the father owed his two sons $1,-400 and discharged it all at once by turning over to them all his property in one day, although the whole amount of said property still continued under the control of the father and to be used by him and his nine sons in the same way as before the alleged transfer.

As to the assumption of the $600 of vendor's lien upon the property, the fact is that said lien had been paid off before the sale to the son was made. This, however, might be explained by the fact that, although the vendor's lien had been paid, nevertheless the father had placed a mortgage on the property, and it was this mortgage which the son meant to assume. But the trouble here is twofold: First the mortgage was for only $500 and not $600, showing that the parties were more anxious to get through with the transfer than to be exact about the account between them; and, secondly, the indebtedness in the mortgage was not considered by the parties as the indebtedness of the son, but of the father. For two years after the sale of the property, to wit, on April 26, 1925, the father obtained, or renewed, a loan of $500 from the Citizens'

National Bank on Pledge of said mortgage note, and the son testified that he took up said note "because the old man he cannot pay it." And there is no pretense or suggestion that the mortgage note was ever taken up before that. In other words, both the father and the son treated the $500 balance due on the mortgage as the obligation of the father and not of the son.

In our opinion the transaction was a pure and simple simulation, intended to put the father's property beyond the reach of plaintiff.

## II.

We do not think the defendant was discharged by the receipt of partial payments from Vincenzo Nicolosi and Paolo Nicolosi. It is true that remission or conventional "discharge in favor of one of the co-debtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter." R. C. C. art. 2203; Fridge v. Caruthers, 156 La. 746, 101 So. 128. But we think that in receiving these partial payments plaintiff did reserve his right against their codebtors. There is nothing sacramental about the form in which the reservation shall be made, and, since no one is presumed to renounce a right unless it clearly appear that he intended to do so, it follows that it suffices that the intention to reserve the right against codebtors may be inferred from any expression in the release of one codebtor which negatives the intent to release the other codebtors.

In releasing Paolo Nicolosi, plaintiff declared that the release was made "with full and complete reservation of all my rights against all other judgment debtors in said suit." In releasing Vincenzo Nicolosi, plaintiff authorized the cancellation of said judgment only in so far as said Vincenzo Nicolosi is concerned and no farther. V. S. Dantoni

was not released at all; all that plaintiff did as to him was to authorize the cancellation of the mortgage in so far as it affected certain property belonging to said Dantoni, but "in all other respects the said judgment is to remain in full force and effect."

We consider all these expressions sufficient to express clearly an intention on the part of plaintiff not to abandon any rights which he had against the several codebtors; and a clearly expressed intention not to abandon a right is a clearly expressed intention to reserve it.

### III.

■ Article 1973, R. C. C., has nothing to do with this case. The meaning of that article is that, where a debtor has disposed of his property to the prejudice of his creditors, the party to whom he has disposed of the property may point out sufficient property still belonging to debtor to satisfy the claim of the creditor, if he can. If the property pointed out is sufficient, then the contract shall not be avoided; but, if not sufficient, then the contract shall be set aside. In this case the debtor is Dominick Ferrara, who is admittedly insolvent, and accordingly his conveyances may be set aside for fraud or simulation. The article is not authority for the proposition that, where there are two or more codebtors in solido, the creditor cannot attack fraudulent acts of any one of them without showing that the others are insolvent. On the contrary, "The creditor of an obligation contracted in solido may apply to any one of the debtors he pleases, without the debtors having a right to plead the benefit of division." R. C. C. art. 2094. To deprive such a creditor of the right to attack the fraudulent conveyances of one of the debtors in solido without showing that his codebtors are insolvent would in effect give such codebtor, not only the benefit of division, but even the benefit, upon making a fraudulent conveyance of his property, of total immunity from suit by the creditor.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of plaintiff, Jac. Cusimano, and against the defendants Dominick Ferrara and Thomas Ferrara, decreeing that the sale by Dominick Ferrara to Thomas Ferrara by authentic act before Robert M. McGehee, notary public, on May 17, 1923, and pretending to convey the southeast quarter of the northwest quarter of section 1 in township 6 south of range 7 east, is a simulation pure and simple, and canceling and annulling the same and ordering its erasure from the conveyance records of Tangipahoa parish. It is further ordered that the defendants pay all costs of both courts.

**(129 So. 633)**
**STATE v. JOHNSON et al.**
No. 30690.

July 2, 1930.