HOOD, Judge.
This is an action to annul a sale of immovable property on the ground of simulation, or, in the alternative, to rescind the sale for non-payment of the purchase price. The suit was instituted by Hypolite Martin, the vendor in that sale, against his son, Sydney Joseph Martin, the purchaser. After the case had been tried on its merits, but before judgment was rendered, the plaintiff died, leaving as his survivors eight children, one of whom is the defendant. By stipulation of counsel, six of the decedent’s children were substituted as parties-plaintiff, and one child, Mrs. Ida Maverick, was joined as an additional party-defendant. Judgment was rendered by the district court in favor of defendant, rejecting plaintiff’s demands, and the substituted plaintiffs have appealed from that judgment.
Plaintiff seeks to annul an act of sales from Hypolite Martin to Sydney Joseph Martin, dated December 13, 1948, by which the vendor, for a cash consideration of $4,000, purports to sell, transfer and convey to the purchaser the following described property situated in Lafayette Parish, Louisiana, to wit:
“The undivided one-half (1/2) in and to that certain tract of land with all improvements situated in said Parish and containing ninety-three (93) arpents more or less and bounded North by U. S. 90, formerly the right of way of the Louisiana Western Railway Company, South by Alexis Domingue or assigns, East by L. G. Breaux or assigns and West by Albert T. Trahan or assigns, and being part of the same property acquired by Hypolite Martin from Emelie Domingue by Act No. 56200, Book M-5, page 146 of the records of said Parish.”
This act of sale is in authentic form and appears on its face to have been executed by the vendor and by the vendee before J. J. Fournet, notary, in the presence of Robert J. Adams and J. Gilbert St. Julien, witnesses. The deed contains the following significant provision:
“Vendor herein reserves the usufruct of the property herein sold during life.”
The evidence establishes that on December 13, 1948, the decedent, Hypolite Martin, an 84 year old, French-speaking man who could not read, write or understand the English language, went to the office of *58 J. J, Fournet, a lawyer and notary in the city of Lafayette, accompanied by his son, Sydney Joseph Martin, by his daughter, Mrs. Ida Martin Maverick, and by his son-in-law John Maverick. Defendant contends that the act of sale being attacked here was executed at that time before the notary and in the presence of the two subscribing witnesses, and that at the same time the consideration recited in the deed was paid to Hypolite Martin in cash.
The record shows that during the year 1946 defendant, Sydney Joseph Martin, an unmarried man, returned from military service and began residing with his father on the above described property, conducting farming operations on a portion of this land. He and his father continued to reside on the property after the sale was completed, and defendant continued to farm a portion of it until the year 1956 when Hypolite Martin stopped defendant from conducting any further farming operations.
Plaintiff contends primarily that he did not sign the deed which he seeks to annul. The document on its face indicates that he signed “by mark.” He testified that he did not affix his mark to the document, and that “Mr. Fournet may be did it, I didn’t do it.” Plaintiff does not allege in his petition, however, that his signature was a forgery, but, on the contrary, he alleges that by the deed he “purported to convey to his son” the property therein described. Plaintiff’s son, his daughter and his son-in-law, all of whom were present when the document was completed, testified that plaintiff actually affixed his mark to the instrument. The trial judge concluded that he did sign the deed, and we find no manifest error in that conclusion.
Plaintiff further contends that the consideration recited in the act of sale was never paid to or received by him, and accordingly that the purported sale was in face a donation in disguise. Pie takes the position that since the transfer was actually a donation, it was void for “(1) reserving a usufruct to the donor, and (2) as a donation omnium bonorum.”
The only evidence offered by plaintiff in support of his allegation that the purchase price was not paid was his own testimony to that effect. Plaintiff admitted that on the day the deed allegedly was executed he went to the office of the notary with the defendant, Sydney Joseph Martin, and with Mr. and Mrs. Maverick, and that while there Mr. Fournet explained to him in English and in French that the property was “mine as long as I lived,” that the notary counted some money and asked Mr. St. Ju-lien also to count it, and that plaintiff saw a few dollars on the table. Pie denies, however, that he received any money at all on that occasion, some of his testimony to that effect being, “No I never did receive $4,000.-00 at all,” and, “I didn’t get a nickle for that,” and further that, “If I would have sold something, then I would have received some money for it, but I don’t get a penny.”
Although Mr. Hypolite Martin stated several times that he did not receive any money from his son in the office of the notary on that occasion, considerable doubt is thrown on the correctness of that statement by his further testimony to the effect that his son on that occasion, “Gave me some money to save for him,” that while in the office of the notary, “He gave me money to put in the bank,” and that his son “Give me two hundred and fifty dollars to put in the bank, he didn’t put in the bank, went that morning, but didn’t put it into the bank.” He further testified:
“Q. Mr. Martin, isn’t it a fact that Sydney paid you cash money at the time you signed that sale by making your mark for that property ? A. Put it in the bank.”
Defendant, Sydney Joseph Martin, testified that on the morning of December 13, 1948, he withdrew more than $4,000 from his checking account in a bank in Rayne, that he then went with his father and with Mr. and Mrs. Maverick to the office of the *59 notary, that the notary read the terms of the sale to the plaintiff both in French and in English, that his father then executed the deed which plaintiff now seeks to annul, that defendant then handed his father $4,-000 in cash, that the money was counted by the notary and by Mr. Hypolite Martin, and that Mr. Martin then took the money. The defendant further testified that no portion of the $4,000 which was paid to Hypolite Martin on that occasion has been returned to him.
John Maverick, who was present in the notary’s office at that time, testified that the notary explained the sale to everyone present in French and English, that Sydney took the money and counted it and laid it on the desk, that the notary took the money and handed it to Hypolite Martin, and that Mr. Martin then counted the money and kept it. This witness also testified that he went to the bank in Rayne that morning with Sydney and saw the defendant withdraw money from that bank.
Mrs. Ida Martin Maverick, plaintiff’s daughter, testified that she saw defendant pay the consideration for the sale to her father in cash, that the notary insisted that her father count the money, and that after Mr. Hypolite Martin had counted the money he “put it in his pocket.” She further stated that the transaction was explained to her father in French and that the only question raised by him was whether the instrument provided that he was to retain the usufruct of such property. The testimony of Mr. Maverick in behalf of defendant is of particular significance because she, as an heir of Hypolite Martin, would be benefited by a judgment in favor of plaintiff.
The evidence further establishes that on the day this sale was executed, Sydney Joseph Martin withdrew the sum of $4,475.-56 from his checking account in the Bank of Commerce and Trust Company, Rayne, Louisiana, which amount was shown to have been an accumulation of his earnings and savings while in military service and subsequent thereto. The evidence also shows that prior to the date of this sale Hypolite Martin had very little money, and he had no income except for a small sum which he realized periodically from rent for signs located on his property and from the occasional sale of cattle. Shortly after the sale was completed, however, Mr. Martin purchased a gas range, a heater and a 150-gallon gas tank from General Gas Corporation. He also purchased a “deep freezer” for $350, and in January, 1950, he bought an automobile for $1,650. He paid cash for all of these items at the time they were purchased, and he offers no explanation as to the source from which he obtained these funds. The record indicates that it would have been impossible for Mr. Martin to have made these purchases, for cash, had he not received a substantial sum of money at or about the time this deed was executed.
The trial judge in evaluating the testimony of plaintiff, Hypolite Martin, said:
“ * * * The Court was not impressed with the testimony of the plaintiff who after having testified that he was without funds admitted the purchase of an automobile and several appliances. His entire attitude while on the stand was most evasive and a reading of this testimony convinces the Court that the plaintiff did actually receive the funds as shown by the sale.”
The trial judge in the written reasons for judgment assigned for the later ruling, further said:
“ * * * The attitude of the plaintiff on the stand was most belligerent and the money used for the articles purchased and the money in his possession were never explained.”
The evidence convinces us, as it did the trial judge, that the purchase price recited in the act of sale was paid to and received by Hypolite Martin at the time the deed was executed, that the parties to that transaction acted in good faith, that the sale was a reality, and that it was not a *60 donation in disguise as contended by plaintiff.
Counsel for plaintiff argues that there is a legal presumption that the sale was a simulation because of the fact, (1) that the vendor reserved the usufruct and retained possession of the property, (2) that the transfer was between close relatives, being from father to son, and (3) that the consideration allegedly was paid in currency. In view of these suspicious circumstances, it is contended that the burden of proof shifts to defendant to establish that the sale was a reality. That argument is based on the provisions of LSA-C.C. Art. 2480, and on the cases of Stipe v. Simon, 223 La. 542, 66 So.2d 330; McBride v. McBride, La.App. 1 Cir., 121 So.2d 353; Camus v. Camus, La.App. Orleans, 91 So.2d 120; Dietz v. Dietz, 227 La. 801, 80 So.2d 414; Howard v. Howard, La.App. 2 Cir., 96 So.2d 345; Cusimano v. Ferrara, 170 La. 1044, 129 So. 630; Agricultural Supply Co., Inc. v. Lavigne, 179 La. 1030, 155 So. 764; and Succession of Combre, 217 La. 955, 47 So.2d 734.
It is argued that a presumption of simulation, as provided in LSA-C.C. Art. 2480 (which seems to relate only to third persons) and the above cited cases (all of which involved third persons), applies here in spite of the fact that at the time the case was tried and submitted the suit was between the vendor and the purchaser, and no third persons were involved. We find it unnecessary, however, to determine whether such a presumption of simulation applied either at the time of the trial or after the present plaintiffs were substituted for their deceased father, Hypo-lite Martin, because in our opinion it has been established by a preponderance of the evidence that the consideration was paid and that the sale was valid. It is immaterial, therefore, whether or not the burden of proof shifted to the defendant at any state of this litigation.
J. J. Fournet and Robert J. Adams, the notary and one of the attesting witnesses to the act of sale, are counsel for defendant in this proceeding. Neither was called as a witness during the trial, however, and no explanation was offered by defendant as to why they were not called. The other subscribing witness, J. Gilbert St. Julien, was deceased at the time of the trial. Counsel for plaintiff argues that the failure of defendant to call the notary and the surviving witness, without any explanation as to why he failed to do so, warrants a presumption that the testimony of both of these witnesses would be adverse to defendant. Such a presumption was applied in Olivier’s Minor Children v. Olivier, 215 La. 412, 40 So.2d 803; Camus v. Camus, supra; Dietz v. Dietz, supra; and Stipe v. Simon, supra.
Counsel for defendant in their written brief explain their failure to testify by stating that attorneys “over a period of some eight years are not likely to remember or have any independent recollection of the exact details of any one particular transaction,” and that they were available to testify for plaintiff if counsel for plaintiff had seen fit to call them. The notary and surviving witness, being counsel for defendant, were more readily available to testify for defendant than for plaintiff, so under some circumstances the failure of defendant to call them as witnesses might justify a presumption that their testimony would be unfavoi'able to him.
In this particular case, however, there were other witnesses present at the time the deed was executed who were called and who testified as to what transpired at that time, so the testimony of the notary and surviving witness was not essential to establish those facts. Also, there is a serious question in this case as to whether the burden of proof rested on defendant at the time of the trial, and we are aware of the fact that attorneys are reluctant to testify in cases in which they are participating as counsel unless it is imperative that they do so. These circumstances, together with the explanation offered by counsel in their written brief, indicate to us that little, if *61 any, significance should be attached to defendant’s failure to call them as witnesses. Assuming, however, that such a presumption does apply against defendant, we are convinced that in spite of that presumption, the evidence presented, including plaintiff’s own testimony, establishes that the consideration recited in the deed was paid and that the sale was valid.
In view of the fact that the consideration recited in the deed was paid and that the sale was a reality, there is no merit to plaintiff’s contention that the transaction was void as being a donation with reservation of the usufruct to the donor, in violation of LSA-C.C. Art. 1S33, or that it was void as being a donation omnium bonorum, in violation of LSA-C.C. Art. 1497.
For the reasons herein set out, therefore, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.