REDMANN, Judge
(concurring).
I believe it should be observed that plaintiff did prove that the outward appearances of possession remained the same after the father sold to defendant: the father did not move off, and the purchasing son (who already lived there) did not move onto the premises. Thus this case appears to be factually similar to Cusimano v. Ferrara, 170 La. 1044, 129 So. 630 (1930), where the son who purchased already resided with his father on the property. In holding the sale a simulation, the court reasoned, at 120 So. 631,
“After this the father continued to reside upon the property, and resides there still. Owing to this, and to the near relationship between the parties, the sale is presumed to be simulated, unless the contrary be clearly shown. * * * ”
Accordingly, Cusimano would apparently oblige us to consider the circumstance of the father’s having continued to reside on the premises as placing the burden of proving the genuineness of the transaction on defendant. In my opinion, however, defendant did bear that burden and establish the genuineness of the sale.
I am somewhat troubled by the circumstance that no payment was made on the note (which was payable in 12 annual installments of $1,000 each, default in paying any of which at maturity “shall ipso facto mature all remaining installments”). No action had been taken by the father-vendor to enforce payment, and the note, presumably matured by default at the first installment due date, Oct. 14, 1947, would have prescribed in five years, C.C. art. 3540, in October 1952. Apparently no payment was actually made until January 1953. *583 At that time, however, there remained un-prescribed the right (inherited by the heirs) to dissolve the sale for nonpayment of the price, C.C. art. 2561; Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944).
Under the circumstance that father and son both resided on the property both before and after the sale, the other children might have remained ignorant of the sale. Thus a credit sale might become a vehicle (at least if the father lived through the prescriptive periods) for a father to effectively compromise forced heirship by the device of allowing prescription to run both on the note and on the resolutory action to dissolve the sale for non-payment of the price.
Nevertheless a credit sale is not a simulation merely because it is for credit and the vendor remains in possession; Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956).
The testimony of the mother in our case was that the father, becoming unable to work the land himself, still wanted the plantation to remain in the family. It had been his grandparents’ property. When the father was approached by a prospective buyer, according to the mother, “papa said he would try to sell it to one of his boys.” A daughter wrote defendant while defendant was in the military service in Japan to ask whether defendant would buy it. The son agreed and ultimately the sale in question was transacted. This testimony, obviously believed by the trial judge, supports the conclusion that the transaction was genuine from its inception.
The price agreed upon was, according to the expert testimony supported by comparable sales, approximately the then market value. That the price was paid in full is established by the preponderance of the evidence.
I concur in the affirmation of the judgment appealed from.