499 So.2d 664 (1986)
Gerald P. CARLSON & Beth Carlson, Plaintiffs-Appellees,
v.
SAFECO INSURANCE COMPANY, Defendant-Appellant.
No. 86-37.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Rehearing Denied January 15, 1987.
Writ Denied March 20, 1987.
Franklin, Moore & Walsh, Carolyn Pratt, Baton Rouge, Larry Boudreaux, Thibodaux, for defendant-appellant.
*665 Cooper, Ortego & Woodruff, Calvin E. Woodruff, Abbeville, Juneau, Hill, Judice, Marquet, Hill & Adley, Patrick A. Juneau, Lafayette, for plaintiffs-appellees.
Before DOMENGEAUX, FORET and STOKER, JJ.
STOKER, Judge.
The plaintiffs, Gerald and Beth Carlson, filed suit against Safeco Insurance Company, their uninsured motorist carrier. Their demand was for policy limits of $100,000 plus penalties and attorney's fees pursuant to LSA-R.S. 22:658. The trial court granted a summary judgment in favor of the plaintiffs finding uninsured motorist coverage of $100,000 for Dr. Carlson's damages. Subsequent cross-motions for summary judgment were filed by the parties on the issues of penalties and attorney's fees. The trial court granted judgment in favor of the plaintiffs, awarding them penalties in the amount of $12,000 and attorney's fees in the amount of $15,000. The defendant has appealed the judgments of the trial court. The plaintiffs have also appealed seeking an increase in the attorney's fees awarded to cover the handling of this appeal.
The issues presented by the defendant in this appeal are: (1) whether the trial court erred in finding uninsured motorist coverage to be $100,000; and (2) whether the trial court erred in finding Safeco's actions to be arbitrary and capricious, thereby entitling the plaintiffs to an award of penalties and attorney's fees.
We amend and affirm as amended the judgment of the trial court.

FACTS
The trial court's excellent factual summary is incorporated herein and adopted as our own. That summary details the pertinent facts of this case as follows:
"Dr. Gerald Carlson was seriously injured in an automobile accident which occurred on March 12, 1982. The accident was caused solely by the fault of another driver, Alfred Landry, Jr. Mr. Landry was insured by State Farm Automobile Insurance Company and his policy carried limits of $50,000.
"Mrs. Diana Simon, with the law firm of Simon and Woodruff was retained by Dr. Carlson on March 23, 1982. Safeco's file on the accident was opened on March 24, 1982.
"An initial question arose as to whether Dr. Carlson had rejected uninsured motorist limits of 100,000/300,000 and selected lower limits of 15,000/30,000. However, in a letter dated August 2, 1982, Elo Dean Whitmore, the Safeco adjuster handling the file, assured Simon that uninsured motorist coverage was in effect with limits of 100,000/300,000.
"A second question arose concerning whether or not the plaintiff could settle with and release State Farm and its insured without compromising his rights against Safeco. Mrs. Simon informed Whitmore of her intention to settle with State Farm and asked for Safeco's approval. Simon testified that Whitmore, in telephone conversations of October 18 and 20, 1982, informed her that Safeco had no subrogation rights which could be impaired and that it was permissible for Simon to settle with State Farm and its insured. Whitmore could not specifically recall the conversations. However, she did recall a similar case which had come up 9 to 10 months before Dr. Carlson's where she had requested a legal opinion on the matter. Safeco's lawyers had informed her that settlement with the principle [sic] insurer and the tort feasor [sic] would not prejudice rights against the uninsured motorist carrier. Whitmore also testified that her appreciation of the law had not changed in the intervening 9-10 months and that she would have maintained the same position.
"On November 3, 1982, the plaintiff settled with State Farm and its insured for the limits of the policy, $50,000. The following language was contained in the release:
"`It is further agreed that in the event other parties are responsible to me/us *666 for damages as a result of this accident, the execution of this agreement shall operate as a satisfaction of my/our claim against such other parties to the extent of the pro rata share of the party/parties herein released.'
"On April 29, 1983, Simon made demand on Safeco for the policy limits, [of] $100,000.
"By May 26, 1983, Willie Winters, a claims adjuster for Safeco, had enough information at his disposal to prepare a detailed claim and quantum analysis for Safeco. The fifth and sixth pages of this analysis are especially important. From page five (5) it is evident that Safeco was in a position to place its net range of exposure at between $41,612.65 and $54,012.65. Thus, it was undisputed that at least $41,612.65 was due to the plaintiff. Page six (6) of the analysis, however, suggests an initial offer of only $35,000 with the next offer in the range of $37,500$38,500. It should be noted that no tender was made until more than a year after the preparation of this analysis.
"On July 27, 1983, the plaintiff filed suit against Safeco seeking penalties and attorney's fees.
"On October 6, 1983, a new memo by Winter [sic] stated that quantum had increased due to Dr. Carlson's persistent medical problems.
"On December 14, 1983, the Louisiana Third Circuit Court of Appeal decided the case of Roy v. USAA, 442 So.2d 1303 (3rd Cir.1983), later reversed at 453 So.2d 564 (La.1984). In that case the Third Circuit determined that the release of the tortfeasor without reservation against the uninsured motorist carrier would also release the uninsured [motorist] carrier.
"On June 13, 1984, Safeco informed the plaintiff that it now took the position that the release of State Farm and Landry released Safeco and that the uninsured motorist limits of the plaintiff's policy were only 15,000/30,000 after all.
"On June 25, 1984, Roy v. USAA, supra, was reversed by the Louisiana Supreme Court.
"On July 16, 1984 and August 1, 1984, counsel for Safeco met with the agents who issued the plaintiff's policy. The agents informed counsel of new evidence tending to show that the plaintiff deliberately chose lower uninsured motorist limits.
"On July 18, 1984, Safeco tendered $15,000 to Dr. Carlson."

SELECTION OF LIMITS ISSUE
The defendant argues that the trial court erred in finding that Dr. Carlson did not execute a valid selection of lower uninsured motorist limits as contemplated by the governing statute, LSA-R.S. 22:1406. LSA-R.S. 22:1406 D(1)(a) provides that:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a *667 part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."

(Emphasis supplied)
The document that the defendant relies upon to prove that the plaintiffs selected lower limits is the application for insurance signed by Dr. Carlson shortly after his move to Louisiana from Colorado. The application is dated July 25, 1980 and contains the following language relative to the issue at hand:
"Further, I acknowledge that I have been offered Uninsured Motorists coverage with limits up to the Bodily Injury Liability limits. I have elected to purchase the limits shown on the Declarations page. If no limits are entered on the Declarations page, I have rejected this coverage."
Dr. Carlson's signature appears on the line beneath this statement. The limits of coverage selected by the plaintiffs do not appear on this application nor is there any indication of what selections were available to choose from. The only way to ascertain what Dr. Carlson might have chosen is to make reference to the Declarations page. The Declarations page was not prepared in conjunction with the application and it was not signed by the plaintiffs. In fact, the Declarations page is prepared by Safeco at a later date.
The trial court, relying on the cases of Aramburo v. Travelers Insurance Company, 426 So.2d 260 (La.App. 4th Cir.1983), writ denied, 433 So.2d 161 (La.1983), and Duhe v. Maryland Casualty Company, 434 So.2d 1193 (La.App. 1st Cir.1983), concluded that the selection of lower uninsured motorist limits must be an affirmative act by the insured and that in order for the insured to select different limits, a choice of limits must be made available to the insured. It further concluded that Dr. Carlson "neither had a selection of limits to choose from nor did he actually select a limit which he desired." Based on those determinations the trial court found, as a matter of law, that there was no selection of lower uninsured motorist limits and the writing signed by Dr. Carlson, and relied upon by Safeco, did not constitute the selection in writing contemplated by LSA-R.S. 22:1406 D(1)(a).
The factual determinations made by the trial court from the record are correct, and the trial court correctly applied the law to the facts. See also Fishman v. Howard, 447 So.2d 513, 518 (La.App. 4th Cir.1984), and Breaux v. Government Employees Insurance Company, 373 So.2d 1335 (La. App. 1st Cir.1979).

PENALTIES AND ATTORNEY'S FEES
By its second assignment of error, the defendant contends it should not have been cast in judgment for penalties and attorney's fees because its failure to pay the plaintiffs was not arbitrary, capricious and without probable cause. We disagree with the defendant's position in that respect.
The trial court's conclusions concerning whether the plaintiffs sustained their burden of proving that defendant's conduct was arbitrary, capricious and without probable cause are, in pertinent part, as follows:
"La.R.S. 22:658 requires the insurer to pay any claim due within sixty (60) days after receipt of satisfactory proofs of loss or be subject to penalties and attorney's fees.
"The defendant argues that one of the reasons for the delay in paying this claim was the failure of the plaintiff to furnish satisfactory proofs of loss. The Court finds no merit in this argument. By May 26, 1983, (at the latest), the defendant had been furnished with enough information to prepare a detailed six (6) page claim analysis with conclusions on quantum. It is the opinion of this Court that satisfactory proofs of loss were furnished as of that date. The undisputed portion of that claim should have been paid within sixty (60) days unless the insurer had a legitimate reason for contesting coverage at that time. No payment was made by the insurer and suit was filed on July 27, 1983.

*668 "It was more than one year after Safeco had been furnished satisfactory proofs of loss (and 11 months after suit was filed) that Safeco changed its position and claimed that it had been released with the release of the principal insurer and that the limits on the policy were $15,000. The Court does not consider this later change of position to be a legitimate reason for the refusal to pay the undisputed portion of the claim within sixty (60) days of May 26, 1983. At the time the claim was due, Safeco did not claim and did not, under then existing Louisiana jurisprudence, have reason to claim that it had been released. Indeed, Safeco's agents assured the plaintiff that a release of that tortfeasor would not impair any subrogation rights of the defendant because the defendant had no subrogation rights. Also at that time, Safeco acknowledged that the plaintiff's uninsured motorist limits were 100,000/300,000. Any subsequent misinterpretation of its own policy is to be held against the insurer. LeBlanc v. Underwriters at Lloyds, London, 402 So.2d 292 (App. 3rd 1981).
"It is the opinion of the Court that the refusal of Safeco to make an unconditional tender of the undisputed amount due to the plaintiff within sixty (60) days of May 26, 1983, was arbitrary and capricious.
"The defendant argues that the later decision of Roy v. USAA, [442 So.2d 1303 (3rd Cir.1983), later reversed at 453 So.2d 564 (La.1984)], and the discovery of new evidence with regard to uninsured motorist limits in July and August of 1984 provided reasonable grounds to deny the claim. This argument is without merit. Information which was gathered after suit was filed and after the sixty (60) day period for payment had lapsed cannot give the insurer a reasonable basis for failing to make a prior tender. Baghramain v. MFA Insurance Company, 315 So.2d 849 (App. 3rd 1975). [Writs denied, 320 So.2d 207 (La.1975) and 320 So.2d 209 (La.1975)].
"Indeed, it appears that the real reason for the failure to pay this claim was not some new legal ground or new evidence. It was simply neglect and lack of diligence on the part of the defendant is sufficient to subject it to penalties and attorney's fees. Allor v. Beldon [sic] Corp., 382 So.2d 206 (App. 3rd, 1980)."
See also Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983); Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir. 1983); Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La.App. 3d Cir. 1984); Nelson v. Allstate Ins. Co., 464 So.2d 1015 (La.App. 1st Cir.1985), and McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1985).
After careful review of this record, especially the documentary evidence consisting of correspondence between the parties and Safeco's inter-office correspondence, we conclude, as did the trial court, that the plaintiffs are entitled to penalties and attorney's fees pursuant to LSA-R.S. 22:658.
The defendant's claim that it had a reasonable basis for refusing to tender any amount of the policy is meritless. What might have been a reasonable basis for refusing to pay, had it been established in 1982, becomes specious in June of 1984, two years after Dr. Carlson's accident. The facts of this case show that the plaintiffs fulfilled the requirements for establishing their entitlement to an uninsured motorist claim. "[T]o estabish a `satisfactory proof of loss' of an uninsured motorist claim, the insured must establish that the insurer receive suficient facts which fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and establish the extent of those damages." Hart v. Allstate, supra.
The Supreme Court in McDill, supra, at 1091, said:
"If the insured has shown that he was not at fault, the other driver was uninsured/underinsured and that he was in fact damaged, the insurer cannot stonewall the insured because the insured is *669 unable to prove the exact extent of his general damages. General damages by their very nature are subjective and incapable of exact computation. To accept the defendant's position that no amount must be tendered unless the exact extent of general damages is proven renders the 4th element of the Hart test meaningless as it places an impossible burden on the plaintiff prior to going to trial. If the first three elements of the Hart test are satisfied and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due. This amount would be unconditionally tendered to the plaintiff not in settlement of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured. The amount that is due would be a figure over which reasonable minds could not differ."
In the McDill case the court recognized the existence of a genuine dispute, yet found the insurer to have acted arbitrarily and capriciously. In the instant case, there was never any dispute that Safeco would be liable and that Dr. Carlson's damages were compensable under his uninsured motorist policy. The insurer, Safeco, knowing the extensive nature of Dr. Carlson's damages, simply wanted to pay as little as possible to its insured.
The trial court committed no error in holding defendant liable to plaintiffs for penalties and attorney's fees for its arbitrary and capricious failure to pay this claim.

ATTORNEY'S FEES ON APPEAL
Plaintiffs by this appeal seek an increase in the award of attorney's fees to compensate for the cost of this appeal. We agree that plaintiffs are entitled to an increase, though not in the amount requested. We feel that the sum of $750 should adequately compensate plaintiff's counsel for his efforts in this appeal. Accordingly, we amend the judgment awarding attorney's fees and increase that award from $15,000 to $15,750.
Accordingly, the judgment of the trial court in favor of the plaintiffs and against the defendant finding uninsured motorist coverage to be $100,000 is affirmed; and the judgment of the trial court awarding the plaintiffs the sum of $112,000 is hereby amended and increased by $750 for additional reasonable attorney's fees, making the total amount of the judgment $112,750. The judgment in all other respects is affirmed.
AFFIRMED AS AMENDED.