475 So.2d 1047 (1985)
Shirley Weber, wife of/and William WEBER, Individually and on Behalf of their Minor Daughter, Gaynell Weber
v.
CHARITY HOSPITAL OF LOUISIANA AT NEW ORLEANS.
No. 84-C-2110.
Supreme Court of Louisiana.
September 10, 1985.
*1048 Wayne H. Carlton, Jr., Orlando G. Bendana, New Orleans, for applicant-plaintiff,
Patrick G. Kehoe, J. Thomas Nelson, Birdsall, Rodriguez, Robelot & Nelson, John Combe, Jr., Alexander Plache, Jones, Walker, Waechter, Poitevent, Carrere & *1049 Denegre, New Orleans, for respondent-defendant.
LEMMON, Justice.
This is an action to recover damages sustained by the minor, Gaynell Weber, when she contracted hepatitis from a blood transfusion during treatment at Charity Hospital for injuries received in an automobile accident. We granted certiorari primarily to determine whether the compromise with and release of the tortfeasor who caused the automobile accident discharged the hospital and the blood supplier from any obligation relating to the transfusion.
Gaynell Weber was injured when the vehicle driven by her mother, Shirley Weber, collided with a vehicle driven by Jimmy Smith. Gaynell was taken to Charity Hospital, where she received a blood transfusion during surgery necessitated by the injuries. Shortly after her release from the hospital, she developed type non-A non-B hepatitis.
Through her parents, Gaynell filed this action against Charity Hospital, who in turn filed a third party demand against Interstate Blood Bank (IBB), the supplier of the blood administered to Gaynell. The original petition was amended to add IBB as a defendant.
In a separate action, Gaynell also sought damages against Jimmy Smith, the driver of the other vehicle, and against her mother's automobile insurer under both liability and uninsured motorist coverage. Part of Gaynell's demand in the separate action was for the damages arising from the transfusion of unwholesome blood. Prior to trial in that case, plaintiff settled with the mother's insurer. The compromise agreement, which was entitled "Partial and Restrictive Release", released and discharged "Government Employees Insurance Company and Shirley Weber only, reserving all rights, I, [Gaynell's representative] have individually". Later in the agreement, all rights against Jimmy Smith and his insurer were specifically reserved, but no mention was made of Charity and IBB. The suit against Jimmy Smith is still pending.[1]
After trial on the merits in the action against Charity and IBB, the court found that that Gaynell's mother was negligent in causing the accident, that her insurance company was liable for those damages caused by the blood transfusion, and that the insurer's obligation was solidary with any obligation on the part of Charity and IBB. However, the court dismissed Gaynell's action on the basis that the release of Gaynell's host driver and her insurer without reservation of rights against Charity and IBB discharged any obligation to Gaynell arising out of the incident.
The court of appeal affirmed. 459 So.2d 705. The court determined that the factual finding by the trial court regarding Gaynell's host driver's negligence was not clearly wrong and that the host driver's liability included damages both for the injuries resulting from the collision and for the hepatitis contracted during the treatment for those injuries. The court further held that any liability on the part of Charity or IBB would be solidary with that of the host driver and that the failure to reserve any rights against the solidary obligors sued in this action resulted in their discharge under the provisions of former La.C.C. Art. 2203, which was in effect at the time of the accident. We granted Gaynell's application for certiorari to determine the effect of the release. 462 So.2d 646.
The initial inquiry is whether the host driver was solidarily liable for the damages resulting from the blood transfusion, since the release of one obligor did not discharge other obligors unless the obligation was solidary. Plaintiffs contend that the lower courts erred in finding the released host driver was a solidary obligor (1) because the record does not support a conclusion that she was negligent in causing the accident and (2) because the supplying of unwholesome blood was an intervening independent cause of the damages *1050 which relieved the host driver from liability.
On the negligence issue, Shirley Weber testified that she stopped at a traffic light on a six-lane divided highway in anticipation of making a left turn from the left lane and that during the turn she was hit in the passenger side by a car that she did not see before the collision. Gaynell Weber testified that she saw the car approaching as her mother made the left turn into its path, but that her mother apparently did not. The overall evidence was sufficient to support the trial court's conclusion that the host driver should have seen the oncoming car before she made a left turn into its path and that her negligence in failing to yield the right of way was a legal cause of the automobile accident.
As to the host driver's liability for the damages which resulted from the blood transfusion, a tortfeasor may be liable not only for the injuries he directly causes to the tort victim, but also for the tort victim's additional suffering caused by inappropriate treatment by the doctor, nurse or hospital staff member who treats the injuries directly caused by the tortfeasor. Berger v. Fireman's Fund Insurance Co., 305 So.2d 724 (La.App. 4th Cir.1974); Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir.1972); Hudgens v. Mayeaux, 143 So.2d 606 (La.App. 3rd Cir.1962); Restatement (Second) of Torts § 457 (1965). The original tortfeasor's responsibility may extend to the risk involved in the human fallibility of physicians, surgeons, nurses and hospital staffs which is inherent in the necessity of seeking medical treatment.[2]
Here, Gaynell Weber sustained a collapsed lung (among other injuries) in the automobile accident. When she underwent surgery to reinflate her lungs, she received several blood transfusions. She contracted hepatitis from contaminated blood used in the transfusions.[3]
The question is essentially one of legal causation which should be viewed under a duty-risk analysis. The host driver's negligence was a cause in fact of Gaynell's contracting of hepatitis, since the blood transfusion would not have been necessary but for the original injury caused by the negligence. Once causation in fact is established, the next step in determining liability is to determine what duty was imposed under the circumstances and whether this particular risk was within the scope of the protection extended by the imposition of that duty. Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970). The duty on the host driver to refrain from causing injury to another by the negligent operation of her vehicle encompassed the risk that the tort victim's injuries might be worsened by the treatment for those injuries. Moreover, there is an ease of association between the injury and the rule of law which gave rise to the duty. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). We therefore conclude that the host driver was liable for any damages resulting from the blood transfusion, along with any other parties whose fault caused Gaynell Weber to contract hepatitis.
We further conclude that Shirley Weber's insurer's liability for any damages resulting from the blood transfusion was solidary with any liability on the part of Charity and IBB. Even though the liability sought to be imposed on Charity and IBB was only for those damages which resulted from the blood transfusion and did not extend to the injuries suffered in the automobile *1051 accident, the host driver would still be solidarily liable with Charity and IBB to the extent of the damages sought in the present action. In Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La. 1983), this court held that two defendants may be solidarily liable for those damages for which plaintiff can compel either to pay, even though other elements of damages may be recoverable only against one of the defendants. It is the coextensiveness of the obligations for the same debt, and not the source of liability, which determines the solidarity of the obligation.
The critical issue is whether Gaynell Weber's release of one solidary obligor (the host driver) discharged the defendents in this case from any obligation they may have had to her.
The former La.C.C. Art. 2203, which was in effect at the time of this accident, provided:
"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
"In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission."[4]
The general rule of law is that no one is presumed to have renounced his rights against others unless it appears that he clearly intended to do so. Carona v. State Farm Insurance Co., 458 So.2d 1275 (La.1984). Because former Article 2203 was contrary to this basic precept, the article has been interpreted so as to give effect as far as possible to the intention of the parties rather than to the technical requirements of the article. See Roy v. U.S.A.A. Casualty Insurance Co., 453 So.2d 564 (La.1984); Dobard v. State Farm Insurance Co., 437 So.2d 366 (La.App. 4th Cir. 1983); Harrison, Remission in the Civil Law, 2 La.L. Review 365 (1940).
The compromise agreement in the present case contained clear indications that Gaynell Weber did not intend to abandon her claims against other obligors. The words "Partial and Restricted Release" were specifically added to the printed form at the time the document was executed. The agreement named the released parties as "Government Employees Insurance Company and Shirley Weber, only". Further into the agreement, rights were specifically reserved against Jimmy Smith, the driver of the other vehicle. There was no apparent reason for any of this language if the obligee, Gaynell Weber, intended to be fully compensated by the settlement and to forego any claim against other solidary obligors. See Dobard v. State Farm Insurance Co., above. Indeed, the agreement clearly established the contrary intention of the obligee that she contemplated a settlement with and a release of only the host driver and her insurer.
While the codal article in effect at the time of the release in this case required an express reservation of rights, there is nothing sacramental about the form in which the reservation must be made. Cusimano v. Ferrara, 170 La. 1044, 129 So. 630 (1930). The intent of the obligee to reserve rights against unreleased solidary obligors may be expressed by any language in the agreement which manifests an intent not to abandon any other claims.
We conclude that the expressions in the compromise agreement were sufficient to reserve Gaynell Weber's rights *1052 against any unreleased obligors who were solidarily liable with the host driver, even those who were not specifically listed in the compromise agreement. Further, the Legislature has now eliminated the requirement of an express reservation, apparently recognizing that the "trap" created by the technical rule of former Article 2203 served no useful purpose and simply created an artificial presumption of the obligee's intent contrary to the usual rules of law and common sense. See Note, A Riddle of Solidarity: The Release of One Solidary Obligor, 45 La.L.Rev. 771 (1985). Because of this change, there is little value in perpetuating the inequities which had prevailed under more rigid interpretations of the discarded law. Accordingly, we conclude that Charity and IBB were not discharged from their obligations to Gaynell Weber because of her compromise with the host driver's insurer.
Because the actions were dismissed on the basis of the discharge of any obligors who were solidarily liable with the released tortfeasor, it was unnecessary for the lower courts to adjudicate other issues pertaining to the liability of Charity and IBB and the amount of the damages.[5] It is appropriate for the court of appeal to make an initial determination of these issues on the complete record, subject to further review by this court.
Accordingly, the judgments of the lower courts dismissing plaintiffs' action are reversed, and the case is remanded to the court of appeal to decide the remaining issues on the basis of the record.
MARCUS, J., concurs in the result.
NOTES
[1] Plaintiff's brief asserts that Smith was uninsured.
[2] The damages resulting from medical treatment necessitated by the original injury may be assessed against the original tortfeasor, irrespective of whether the treatment was rendered in a negligent manner. Restatement (Second) of Torts § 457, Comment a (1965). Negligence in treatment, of course, may be pertinent to the liability of the party rendering the medical services.
[3] Although one doctor testified that there were other possible causes of hepatitis, the overall evidence established that the blood transfusion, more probably than not, was the cause of Gaynell Weber's hepatitis.
[4] As part of the general revision of the law of obligations in the Civil Code by Acts 1984, No. 331, the Legislature changed the law which had previously required an express reservation of rights when an obligee entered into a compromise with one of several solidary obligors. Under La.C.C. Art. 1803, effective January 1, 1985, the remission of the debt by the obligee in favor of one obligor or the compromise between the obligee and one obligor does not extinguish an obligation which is solidary, but only benefits the other solidary obligors to the extent of the portion of the released obligor. The amendment eliminated the prior requirement of an express reservation of rights, which had been unanimously criticized by French and Louisiana scholars. See comments to La.C.C. Art. 1803.
[5] Among the remaining issues pertaining to liability are whether the record contains any evidence of negligence on the part of either defendant which caused the damages; whether IBB, which collected the blood from donors, processed it, and sold it to Charity, should be held liable to plaintiff under the theory of strict liability announced in DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La. 1981); whether the theory of strict liability is applicable to Charity, who purchased the blood in a closed system and simply administered it to the patient, charging a fee both for the blood and for the service; whether any strict liability on the part of either defendant for this 1980 trans-1982, No. 204, or by La.C.C. Art. 2322.1, as enacted by Acts 1981, No. 331, and amended by Acts 1982, No. 204, or by La.C.C.Art. 2322.1, as enacted by Acts 1981, No. 611; and whether, if both defendants are liable to plaintiff, IBB is liable to Charity on its third party demand for contribution or indemnity.