610 So.2d 132 (1992)
Raymond Larry STOCKLE, et al.,
v.
ZIMMER, USA, INC., et al.
No. 91-CA-1534.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
On Rehearing November 24, 1992.
Writ Granted February 5, 1993.
Robert J. Young, Jr., Robert J. Young, III, Young, Richaud, Theard & Myers, Edward A. Rodrigue, Jr., Terry B. Deffes, Boggs, Loehn & Rodrigue, New Orleans, for appellees.
Russ M. Herman, Mark R. Wolfe, Charles O. Taylor, Matthew Chenevert, Herman, Herman, Katz, & Cotlar, New Orleans, for plaintiffs/appellants.
Before BARRY, WARD and JONES, JJ.
JONES, Judge.
Plaintiffs, Raymond and Kaye Stockle appeal the judgments of the trial court dismissing their actions against the appellees, Blood Center for Southeast Louisiana, Inc., Dr. Treuting, Dr. Simpson, and the Pathology Laboratory. Plaintiff had alleged that the appellees were responsible for Raymond Stockle receiving AIDS tainted blood in an operation which occurred on December 11, 1984. The trial court found that the actions filed against the appellees had prescribed.
This litigation began in December of 1985 when the plaintiffs filed their first petition seeking damages for an injury *133 which allegedly occurred as a result of a defective orthopedic device which was implanted in Raymond Stockle's back during surgery on December 11, 1984. Named as defendants in the original, first and second supplemental petitions were various defendants who allegedly manufactured, designed, and/or supplied the defective device.
In April, 1986, Raymond Stockle was diagnosed with AIDS. On April 1, 1987 Raymond Stockle notified a representative of defendant Pathology Laboratory that he was HIV positive. During a telephone conversation, he expressed his belief that a connection existed between his HIV infection and the blood that had been transfused into his body during the surgeries performed on his back at St. Charles General Hospital in December, 1984 and March, 1985. Despite the fact that he was aware of the connection between his HIV infection and the blood transfusion, he never attempted to sue the Hospital and did not add the Blood Center for Southeast Louisiana as a defendant in his pending litigation until January, 1990. He did not attempt to add Dr. Treuting, Dr. Simpson and the Pathology Laboratory as defendants in his pending litigation until May 2, 1990.
The primary issue to be addressed in this appeal is whether the appellees are solidarily liable with the originally named defendants to this litigation. If the defendants are solidarily liable, this action has not prescribed. Pursuant to La.C.C. art. 1799 the suit against the original defendants would have interrupted prescription as to the later named defendants. In Chalstrom v. Desselles, 438 So.2d 215, 866 (La. App. 4th Cir.1983) we stated that in cases of solidary liability, new defendants may be added at any time prior to the dismissal of the suit. Also, see Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986).
Blood Center for Southeast Louisiana, Inc. was added as a defendant in January, 1990 and Dr. Treuting, Dr. Simpson, and the Pathology Laboratory were added as defendants to the suit in May, 1990. The suit against some of the original defendants was dismissed on May 30, 1990 and against others on April 10, 1991. Since the litigation against some of the original defendants was still pending when the appellees were added as defendants, a finding of solidary liability would necessarily result in a finding that prescription had not run at the time that suit was instituted against these defendants. However, since we believe that the appellees cannot be considered solidarily liable with the originally named defendants in this litigation, we affirm the decision of the trial court dismissing the claims against appellees.
In reaching this conclusion that the appellees are not solidarily liable with the originally named defendants, we note that La.C.C. art. 1794 provides as follows:
Art. 1794. Solidary obligation for obligors
An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.
Pursuant to this provision, solidary obligors are persons that are bound to perform the same obligation. Payment by any one exonerates the rest and the debtor may compel full performance from any one of such obligors. See Provident Life and Accident Insurance Company v. Turner, 582 So.2d 250 (La.App. 1st Cir.1991) and Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 at 725 (La. 1973).
In this case the appellees are not bound to perform the same obligation as the original defendants to this litigation. The original defendants are liable for damages caused by the defective luque wires. Said damages consist of added pain and suffering and the expenses attendant to having a second surgery to remove the defective wires and replace them with new ones. The appellees are allegedly liable for damages resulting from the plaintiff developing AIDS and eventually dying. The original defendants are not obliged to pay any *134 of the expenses attendant to the damages caused by the appellees and the appellees are not obliged to pay any of the damages attendant to the damages caused by the original defendant. Each defendant is liable for the damages caused by its separate negligent act.
Appellants argue that the appellees are joint and in solido tortfeasors with the original defendants. However, they fail to cite any statute or case law which expressly imposes solidary liability in a case such as this. They acknowledge that pursuant to La.C.C. art. 1796, solidary of obligation cannot be presumed. Rather, it arises from a clear expression of a party's intent or from the law. None of the defendants performed any act which can be construed as an intentional act to be held solidarily liable with each other for damages. Further, the appellees did not have any type of relationship with the original defendants that would require this court to impose solidary liability.
Plaintiffs' reliance upon cases such as Joiner v. Diamond M. Drilling Co., 688 F.2d 256 (5th Cir.1982); Billiot v. American Hospital Supply Corp. 721 F.2d 512 (5th Cir.1983); Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985); and Pickard v. Baugh, 565 So.2d 1102 (La. App. 4th Cir.1990) for the proposition that a finding of solidary liability is mandated under the circumstances of this case is misplaced.
The instant case is distinguishable from all of these cases. In Joiner, supra, a seaman was injured in an offshore accident and subsequently died six days after the accident. His widow filed a damages action against her late husband's employer and the manufacturer of allegedly defective shipboard equipment. These defendants filed third party claims for contribution and indemnity against the decedent's physician claiming that the physician's malpractice ultimately caused the death. The trial court dismissed the third party claims. The court of appeals reversed the dismissal of the contribution claims and held that since the physician, employer, and manufacturers were solidary obligors, a claim for contributions could be maintained. The court concluded that since each defendant's negligence was alleged to have caused Joiner's death, the defendants were solidary obligors. This case differs from Joiner, supra, in that the alleged negligence of the appellees and the originally named defendants is not for the same thing. The originally named defendants are allegedly liable for damages caused by the defective orthopedic device which was placed in the plaintiff, Raymond Stockle's back. More specifically these defendants caused Raymond Stockle to suffer "extensive scarring, pain, addiction to analgesics, financial embarrassment along with pain, suffering and an inability to ever work again." Because of the alleged negligence of these defendants, the plaintiff, Raymond Stockle had to undergo three additional hours of surgery in March, 1985 to repair the broken luque wires. The appellees are allegedly liable to the plaintiffs for damages incurred as a result of a different injury, i.e. they are allegedly responsible for the plaintiff developing AIDS, a fatal disease. The plaintiff suffered two separate kinds of injuries in this case. The fact that the defective blood was allegedly introduced into the plaintiff's body during the same operation wherein the defective luque wire was also inserted does not make the suppliers of the blood and the suppliers of the wires liable for the same thing. The injury caused by the defective wires is separate from the injury caused by the defective blood. Since the defendants are not liable to the plaintiff for the same injury, they are not liable for the same thing and are not solidarily liable. See Threlkeld v. Haskins Law Firm, 922 F.2d 265 (5th Cir. 1991).
Similarly this case is distinguishable from Billiot, supra, in that the plaintiff in that case suffered a single injury because of the concurrent negligence of the operating surgeon and the manufacturer of a defective mammary prosthesis, whereas, the plaintiff in this case suffered two separate injuries because of the independent negligence of a supplier of allegedly defective *135 blood and a manufacturer of a defective orthopedic apparatus.
Both Weber and Pickard are cases wherein the courts utilized a duty risk analysis to hold that an original tortfeasor is solidarily liable for damages caused by a different tortfeasor which causes the original injury to worsen. The theory behind this analysis is that the original tortfeasors made it possible for the subsequent injury to occur since "but for" the original injury, the victim would not have been placed in the position of sustaining the subsequent injury. Thus, in Weber, supra, a host driver who negligently injured the victim was held to be solidarily liable for any damages suffered by the victim which resulted from blood transfusion which the victim had during the course of the surgery for the original injury. The court, in Weber, stated:
As to the host driver's liability for the damages which resulted from the blood transfusion, a tortfeasor may be liable not only for the injuries he directly causes to the tort victim, but also for the tort victim's additional suffering caused by inappropriate treatment by the doctor, nurse or hospital staff member who treats the injuries directly caused by the tortfeasor.... The original tortfeasor's responsibility may extend to the risk involved in the human fallibility of physicians, surgeons, nurses and hospital staffs which is inherent in the necessity of seeking medical treatment. Id. at 1050.
In this case, neither the manufacturers nor the blood suppliers can be considered the original tortfeasor. Neither set of defendants was responsible for the plaintiff needing to have the surgery. He already had a bad back. The surgery would have taken place irrespective of any action of the defendants. However, the injuries that occurred during the course of the back surgery because of separate acts and breaches of duty by these defendants caused the plaintiff to suffer additional pain and to sustain even greater injuries. While such injuries gave rise to causes of action for damages, the injuries did not cause the parties inflicting the damage to be solidary obligors. Their acts are not so interrelated so as to impose solidary liability.
Pursuant to the provisions of La.C.C. art. 3492 the plaintiff had one year from the day his injury occurred or damage was sustained to institute a suit against the blood supplier defendants. The injury occurred in December, 1984. Plaintiff was clearly aware that he had sustained damages either in April 1986 when he was diagnosed as HIV positive or certainly by April, 1987 when he spoke to a representative of Pathology Laboratory and expressed his belief that the blood transfusion received while undergoing surgery in 1984 had caused him to test positive for the HIV antibody. Yet, he never sought to sue the doctor, hospital or anyone else who had any connection with the surgery wherein the tainted blood was transfused until January, 1990 when he added the Bloodcenter for Southeast Louisiana, Inc. to this ongoing litigation. No explanation has been offered by the plaintiffs either in their brief or in oral argument to explain the inordinate delay in instituting suit against the appellees. Nor can we envision any logical explanation for such a delay, particularly in view of the fact that litigation was already pending against the manufacturers for an injury allegedly suffered during the same operation.
For these reasons, we affirm the decision of the trial court dismissing plaintiffs' claims against the appellees because of prescription.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting with reasons.
Because of undeniable negligence the family of Raymond Larry Stockle was destroyed from AIDS tainted blood.
The Blood Center and The Pathology Laboratory supplied the required blood during Mr. Stockle's surgical implant.
*136 There was one operation during which the defective implant and deadly blood was utilized. Each defendant was an integral part of the surgery and each is bound for the same obligation and should be held in solido. See Billiot v. American Hospital Supply Corp., 721 F.2d 512 (5th Cir.1983).
I also dissent as to the denial of liability under a warranty theory as to The Pathology Laboratory. Strict liability and warranty are not applicable to "hospital blood banks" and "nonprofit community blood banks." See La.C.C. art. 2322.1, La.R.S. 9:2797. The Pathology Laboratory does not suggest that it qualifies under either category.
The Pathology Laboratory argues that the legislative intent of La.R.S. 9:2797 was to abolish all causes of action based on any theory of liability except for negligence against a supplier of blood and blood components. That argument is tenuous. There is no showing that The Pathology Laboratory is a "hospital blood bank" or a "nonprofit community blood bank." Without such identity The Pathology Laboratory is liable under a warranty theory.
The courts are facing an alarming number of negligence claims related to AIDS. Due to the nature of the fatal virus, knowledge of its existence is rarely (if ever) known before prescription has accrued. The net result is that blatant, deadly negligence goes unanswered. The reality of this no-win situation must be addressed by the legislature in realistic terms.
Before BARRY, WARD and JONES, JJ.

ON REHEARING GRANTED
JONES, Judge.
We granted a rehearing in this matter to address the issue of whether the doctrine of contra non valentem applies so as to defeat a plea of prescription. Having considered the issue anew, we conclude that the conditions necessary to establish the applicability of the doctrine of contra non valentem do not exist in this case. For this reason, we again affirm the decision of the trial court dismissing plaintiffs' claims against appellees, Drs. Simpson and Treuting and the Pathology Laboratory because of prescription.[1]
On rehearing plaintiffs argue that the doctrine of contra non valentem applies because it was not until a deposition was taken in 1989 that the actual source of the AIDS contaminated blood was confirmed. Since the appellees were added as defendants within one year of that date, plaintiffs argue that the suit was timely filed.
Additionally, plaintiffs argue that the appellee had a fiduciary duty to investigate and notify plaintiff of the source of the contaminated blood once they received a call from plaintiff Raymond Stockle in 1987 advising them that he was HIV positive and that he suspected that his condition was caused by the blood transfusion received during his December, 1984 back surgery.
We find that neither of the above arguments are persuasive. The one year prescriptive period began to run from the time that the plaintiff had actual or constructive knowledge of the tortious act which formed the basis for his action. Dauzat v. St. Paul Fire & Marine Ins. Co., 336 So.2d 540 (La.App. 3rd Cir.1976) Also see Maung-U v. May, 556 So.2d 221 (La.App. 2nd Cir.1990), writ denied, 559 So.2d 1385 (La.1990) wherein the court, in discussing the legal analysis for medical malpractice claims stated:
... When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then *137 the facts and cause of action are reasonably knowable to the plaintiff. Inaction by the plaintiff for more than a year under such circumstances is not reasonable. supra at 225.

The record clearly establishes that as of April, 1987, plaintiff, Raymond Stockle knew that he had tested positively for the AIDS virus and that he strongly suspected the condition was directly caused by the blood transfusion that he had received in December, 1984. No one disputes the fact that the plaintiff, Raymond Stockle called the Pathology Lab and specifically told a representative about his condition and his suspicions concerning the cause of his condition. Nevertheless, despite the fact that he already had litigation pending against the manufacturers of the allegedly defective wiring that had been placed in his back during the same operation, he made no attempts to add the appellees as defendants in the pending litigation until 1990. Since we have already determined that the newly added defendants are not solidarily liable with the originally named defendants, it is clear that the plaintiff should have named the appellees as defendants one year from the date he knew of his cause of action against them. That date would have been some time in April 1988. Since he failed to timely name the appellees as defendants, his action against these defendants are barred because of prescription.
AFFIRMED.
BARRY, J., dissents for the reasons in the original opinion, see p. 135.
NOTES
[1] Subsequent to the submission of the case for rehearing, the plaintiffs and defendant The Blood Center for Southeast Louisiana filed a joint motion to dismiss all claims against The Blood Center for Southeast Louisiana.