GREMILLION,
Judge, dissents.
|,I dissent from the denial of the application for -writs filed by Defendant/Defendant in Cross Claim, Mr. Allen J. Patout.
The petition in this matter alleges that Mr. Patout installed and “maintained full and total control of the elevator,” “installed a dangerous and defective electric hoist,” and other acts of negligence. The petition further alleges that Defendant/Cross-Claimant, Harbor Freight Tools USA, Inc., (Harbor Freight) manufactured and sold the hoist.
The specific allegations against Harbor Freight were that it was liable for:
A. Designing, manufacturing, assembling, marketing and selling a product which was dangerously defective and unreasonably dangerous in construction and composition;
B. Designing, manufacturing, assembling, marketing and selling a product which was dangerously defective and unreasonably dangerous in its design;
C. Designing, manufacturing, assembling, marketing and selling a product which was dangerously defective and unreasonably dangerous in its failure to have adequate instructions and/or warnings;
D. Other acts of negligence, fault, and strict liability which may be shown through discovery or at trial; [and,]
E. Generally, the failure of this defendant to act with required degree of care commensurate with the existing situation.
[ ^Allegations (A), (B), and (C) carefully track the language of the Louisiana Products Liability Act (LPLA), La.R.S. 9:2800.51, et seq., and, specifically, three of the four exclusive theories of liability under which a product can be deemed unreasonably dangerous for purposes of establishing a manufacturer’s liability under the Act.[1]
In his “Second Amending Petition for Damages,” the plaintiff made more specific allegations against Harbor Freight to identify why the electric hoist was unreasonably dangerous in construction or composition, in design, and in failing to adequately warn.
Harbor Freight then answered and asserted thirty-six affirmative defenses, as well as its cross claim against Mr. Patout and his insurer, in which it alleged that it is entitled to indemnity and contribution from them for any liability for which it might be found under the plaintiffs demands in strict liability. Mr. Patout and his insurer filed their exception of no cause of action that asserted that Harbor Freight has no cause of action for indemnity or contribution. The trial court denied this exception.
In non-intentional tort cases, “liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarity liable with any other person for damages attributable to the fault of such other person.” La.Civ.Code art. 2324(B). The Louisiana Supreme Court *1289 and this court have addressed this situation.
In Dumas v. State, through Dep’t of Culture, Recreation & Tourism, 02-63 (La. 10/15/02), 828 So.2d 530, the plaintiffs’ spouse and father had been killed in a bicycle accident at Chemin-a-Haut State Park near Bastrop, Louisiana. The State asserted that the alleged malpractice of the responding health care providers caused or contributed to the victim’s death and asserted this as an affirmative defense. Plaintiffs sought to strike these allegations, and the trial court agreed. The Louisiana Supreme Court held that the State was entitled, under La.Civ.Code art. 2324, to have the fault, if any, of the health care providers assessed by the jury.
The Supreme Court took note of the legislative history of La.Civ.Code arts. 2323 and 2324:
Prior to 1980, Louisiana courts applied a judicially-created rule based on common-law precedents under which a plaintiffs contributory negligence barred any recovery in a negligence action. Rozell v. Louisiana Animal Breeders Co-op., Inc., 496 So.2d 275, 279 (La. 1986); Bell v. Jet Wheel Blast, 462 So.2d 166, 169 (La.1985). The first Louisiana case that clearly adopted the doctrine of contributory negligence was Fleytas v. Pontchartrain Railroad Co., 18 La. 339 (1841), which was decided at a time when there was no organized body of civilian doctrine on the issue of comparative fault. Bell, 462 So.2d at 169. Effective August 1, 1980, the legislature amended La. C.C. art. 2323 to eliminate the doctrine of contributory negligence and to provide a procedure by which a plaintiffs negligence would operate only to' reduce his recovery in proportion to his fault. Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1132 (La.1988); Bell, 462 So.2d at 170. As amended by Act No.
431 of 1979, La. C.C. art. 2323, entitled “Computation of damages,” provided:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
The amendment, the effect of which was to prevent courts from applying any rule more damaging to plaintiffs ease than comparative negligence, Bell, 462 So.2d at 170, was beneficial to plaintiffs in that Lit increased the probability that they would be compensated, at least in part, for their injuries.
Act No. 431 of 1979 also revised La. C.C. art. 2324 to reaffirm the principle of solidary liability among joint tortfea-sors, a principle that had been a part of Louisiana’s civil tradition for more than 150 years. See Touchard v. Williams, 617 So.2d 885 (La.1993). As amended by this Act, La. C.C. art. 2324, entitled “Liability for assisting or encouraging wrongful act,” provided:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act. Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a *1290 judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
One of the underlying policies of soli-dary liability, as well as tort law as a whole, is victim compensation. Touch-ard, 617 So.2d at 889. The imposition of the principle of solidarity among joint tortfeasors “ ‘espouse[s] a theory that it is better to allocate damages to the injurers, even in greater portions than their respective degrees of fault, than have victims suffer a reduced recovery.’” Id. at 890 (quoting M. Kevin Queenan, Civil Code Article 2324: A Broken Path to Limited Solidary Liability, 49 La. L.Rev. 1351, 1356 (1989)). That is, the modern justification for soli-dary liability is founded on the belief that the innocent plaintiff should have the opportunity to obtain full compensation from any person whose fault was an indispensable factor in producing the harm. Touchard, 617 So.2d at 890. Thus, the primary effect of solidary liability is that any tortfeasor may be made to pay the judgment in full for other defendants who are insolvent, unknown, or absent. Id.
In 1987, the legislature confronted the problem of compelling solvent defendants who were not 100% at fault to pay for 100% of plaintiffs’ damages by enacting compromise legislation that attempted to balance the competing interests of judgment creditors and judgment debtors. Id. By Act No. 373 of 1987, the legislature amended La. C.C. art. 2324, newly entitled “Liability as solidary or joint and divisible obligation,” to provide:
LA. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as provided in Paragraph A of this Article, or as otherwise provided by law, and' hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency,' ability to pay, degree of fault, or immunity by statute or otherwise.
This amendment balanced the risks of insolvent, incapable of paying, unknown, and absent tortfeasors among plaintiffs and known, solvent defendants. Touch-ard, 617 So.2d at 892.
In a case arising prior to the 1987 amendment, Weber v. Charity Hosp. of La. at New Orleans, 475 So.2d 1047 (La.1985), this court was presented with the issue of whether a compromise with and release of an initial tortfeasor discharged a hospital and a blood supplier that gave the victim unwholesome blood during treatment for injuries she sustained in the original accident from any *1291 obligation relating to the blood transfusion. To answer this question, we were required to determine whether the original tortfeasor was solidarity liable for the damages resulting from the transfusion since the release of one solidary obligor discharged other solidary obli-gors. We concluded that an initial tort-feasor may be liable for the injuries he directly caused to the tort victim as. well as for the victim’s additional suffering caused by inappropriate treatment by a health care provider who treated the original injuries and characterized this inquiry as one of legal causation which should be addressed under a duty-risk analysis. We then determined that the initial tortfeasor’s negligence was a cause in fact of the injuries the victim received as a result of inappropriate medical care, and that the initial tortfea-sor’s duty to refrain from negligently harming others encompassed the risk that the |fivictim’s injuries might be worsened by the treatment for those injuries. Consequently, we found that, as a matter of policy, the initial tortfeasor’s negligence was the legal cause of the injuries arising from the subsequent medical treatment and the initial tortfea-sor could therefore be held liable for any damages resulting from that treatment. Finally, we concluded that the initial tortfeasor’s liability for any damages arising out of the medical treatment was solidary with any liability found to exist on the part of the hospital and the blood supplier.
After the 1987 amendment of Article 2324, an issue arose concerning the effect of the amendment on this court’s holding in Weber. In Lambert v. United States Fidelity & Guar. Co., 629 So.2d 328 (La.1993), a per curiam opinion, we determined that the amendment reducing solidarity among solidary obligors to only the extent necessary for the tort victim to recover fifty percent of his recoverable damages did not change the principle announced in Weber that the initial tortfeasor could be held liable for any damages arising out of medical treatment necessitated by the original accident. We stated that the initial tort-feasor’s liability was based on the fact that he was the legal cause of 100% of the victim’s harm as well as on the imposition of a solidary obligation between joint tortfeasors. We determined that the 1987 amendment to La. C.C.' art. 2324 did not change the Weber principle, in part because an apportionment of fault between the original tortfeasor and the subsequently treating health care provider could result in the victim receiving less than the full amount of the judgment. We went on to note, however, that even under the Weber rationale that remained valid despite the 1987 amendment, the original tortfeasor would not ultimately bear the cost of the entire tort judgment because he had the right to seek contribution from the health care provider. We explained this result relieved the victim of having to prove which of the two tortfeasors caused what injuries and, instead, properly placed this burden on the original tortfeasor.
Several years after this court’s opinion in Lambert, the legislature again amended La. C.C. arts. 2323 and 2324(B), this time to abolish solidary liability among non-intentional tortfeasors and to place Louisiana in a pure comparative fault system. Amended by Act 3 of the 1st Ex.Sess. of 1996, La. C.C. art. 2323, entitled “Comparative fault,” now provides:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a non- *1292 party, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If ajjperson suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
In addition to Article 2323, Act 3 also amended La. C.C. art. 2324 to provide:
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable.
C.Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.
Id. at 532-36. (Footnotes omitted).
The court went on to note that the 1996 amendment abolished solidary liability among joint tortfeasors. The basis for indemnity and contribution among joint tort-feasors was the solidary nature of them liability prior to 1996, as was clearly evidenced by the 1979 amendment’s language “reserving to all parties their |8respective rights of indemnity and contribution.” 1979 La.Acts No. 431. This language was removed from Article 2324 by 1987 La.Acts No. 373.
The abolition of solidary liability among joint tortfeasors abolished demands for indemnity and contribution among them absent an intentional tort or an agreement for indemnity. “[La.Civ.Code art. 2324(B) ] abolishes solidarity among non-intentional tortfeasors, and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to [La.Civ.Code art.] 2323.” Dumas, 828 So.2d at 537.
This court, in Beauregard v. State, through Dep’t of Transp. and Dev., 09-271 (La.App. 3 Cir. 10/7/09), 21 So.3d 442, affirmed the trial court’s grant of the State’s third-party demand for indemnity against the City of Alexandria. The plaintiff was allegedly injured when she fell due to a three-inch elevation difference in sections of sidewalk. She sued the Department of Transportation and Development, which then field its third-party demand against the city, arguing that maintenance of sidewalks was the city’s responsibility. We rec *1293 ognized the abolition of solidary liability as the basis for non-contractual indemnity and affirmed the trial court.
The majority relies upon two cases that are clearly distinguishable from the present matter. The first is Nassif v. Sunrise Homes, Inc., 98-3193 (La. 6/29/99), 739 So.2d 183. This case pitted a homeowner against her builder under a theory of red-hibition for a failed foundation. The builder, in turn, filed a third-party demand for indemnity against the engineering firm that designed the foundation. Because the builder was “only technically or constructively liable for [plaintiffs] loss,” the builder was subjected to damages itself as the result of the engineering firm’s negligence and was entitled to “restitution” from the engineering firm, including attorney fees. Id. at 187. Nassif involved a defendant and a third-party defendant, |9one of whose liability arose in redhibition and the other from tort. Either could have been sued by the plaintiff and found' liable for the whole of her damages. In the present matter, both Mr. Patout and Harbor Freight are exposed to liability only in tort. Each can only be found liability for the degree of fault assessed by the jury at trial.
The second case relied upon by the majority is Klumpp v. XYZ Ins. Co., 547 So.2d 391 (La.App. 3 Cir.), writ denied, 561 So.2d 1322 (1989). It should be noted first that Klumipp involved a pre-1987 incident; thus, the 1979 version of La.Civ. Code art. 2324 applied, and demands for indemnity and contribution even among joint tortfeasors was statutorily authorized. The underlying case involved a reputed natural gas pipeline. The construction company whose backhoe was excavating at the site filed a demand for indemnity against the manufacturer of the equipment, alleging that it was defective. This court noted that only one whose liability is passive or vicarious, and who is free from fault “and has discharged a debt that should be paid wholly by the indemnitor” is entitled to indemnity. Id. at 394. In the present matter, there is no vicarious or passive liability that can be found against Harbor Freight. The Klumpp case does not present a matter analogous to the present and was superseded by 1987 La. Acts No. 373.
In conclusion, in a non-intentional tort case, there no longer exists solidary liability; therefore, in the absence of an agreement, there is no indemnity among joint tortfeasors. Here, there is no allegation that any indemnity agreement exists between Mr. Patout and Harbor Freight. If a jury finds that Harbor Freight manufactured the hoist and that the hoist was unreasonably dangerous by construction or composition, in design, or in Harbor Freight’s failing to adequately warn user, the jury will assign Harbor Freight a percentage of fault under the LPLA. On the other hand, if the jury finds that Mr. Pat-out utilized the hoist in a |inmanner that was not reasonably anticipated or that the characteristic that rendered the hoist unreasonably dangerous did not result from a reasonably anticipated alteration, it must find that Harbor Freight is not liable to the plaintiff. La.R.S. 9:2800.54. I would reverse the trial court, enter judgment maintaining the exception of no cause of action, and remand the matter to allow Harbor Freight the opportunity to cure the defects in its cross claim by amendment in accordance with the principles of law set forth above.

. The LPLA “establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory not set forth [in the Act].” La.R.S. 9:2800.52. The four theories of liability set forth in the LPLA are: unreasonably dangerous in construction or composition, La.R.S. 9:2800.55; unreasonably dangerous in design, La.R.S. 9:2800.56; unreasonably dangerous because of inadequate warning, La. R.S. 9:2800.57; and unreasonably dangerous because of nonconformity to express warranty, La.R.S. 9:2800.58.